## UNITED STATES v. WALKER et al.
### No. 13648.

District Court, W. D. Missouri, W. D.

April 1, 1937.

Maurice M. Milligan, U. S. Atty., and Randall Wilson, Sam C. Blair, Thomas A. Costolow, and Richard K. Phelps, Asst. U. S. Attys., all of Kansas City, Mo.

I. J. Ringolsky, William Boatright, Harry Jacobs, Ludwick Graves, and James Daleo, all of Kansas City, Mo., for defendants.

OTIS, District Judge.

The verdict of guilty as to defendants Walker and Drummond was returned by the jury on Thursday, February 18, 1937. After it had been read by the clerk I announced that sentence would be imposed on the defendants convicted and on two others who had entered pleas of nolo contendere on Thursday, February 25th, at

9:30 a. m. A motion for a new trial and in arrest of judgment was filed February 23, 1937. On the morning of Thursday, February 25, 1937, before imposing sentences, I said to counsel for defendants that they would be heard in argument in support of the motion for new trial and in arrest of judgment and might have thirty minutes for that purpose. Counsel responded by saying they did not desire to make an oral argument, deeming it unnecessary for that each of the matters set out in the motion already had been given consideration by the court and that to reargue them would be merely to repeat what already had been presented. There was, therefore, no oral argument. I had read the motion and I overruled it, announcing that, if time permitted, a written memorandum setting out reasons for the ruling would be prepared and filed.

■ I conceive it to be the duty of the trial judge, when a motion for a new trial is filed in a criminal case (or, for that matter, in any case), to prepare and file a memorandum of the reasons for his action on the motion. He owes that duty not only to the parties, but even more he owes it to the judges of the reviewing court or courts. The judges of those courts sometimes are aided by statements of reasons for rulings made in the court below.

Unfortunately this memorandum cannot be as helpful as otherwise it might be. If learned counsel for defendants had made an oral argument in support of the motion, they would have indicated the rulings which they specially regard as erroneous and prejudicial. Those rulings then might have been discussed in the memorandum. It is impossible, of course, in the absence of such an oral argument (and no criticism is intended for the failure of counsel to argue the motion orally), to know which of the 74 grounds set up in the motion for new trial really are relied on. It is entirely impracticable to discuss each of these 74 grounds.

About all that can be done is to classify the grounds set out in the motion under several heads and then to discuss briefly each of the several heads. The motion attacks (1) rulings made before the trial began; (2) the overruling of motions for instructed verdicts; (3) rulings on the admission and exclusion of testimony; (4) the charge to the jury.

Points 1 and 2 of the motion concern the overruling of the plea in abatement (which was bottomed on the nature of the charge of Judge Reeves to the grand jury) and the overruling of the motion to quash the indictment. Most of what I had to say about these matters I said in the opinion touching them filed in this case. To that a sentence may be added now. Now that we know from the disclosures of testimony in this case something of what the grand jury actually had before it on which to bottom its indictment, we can more fully realize what a miscarriage of justice it would have been to abate the indictment on the theory that possibly it was the result, not of evidence before the grand jury, but of prejudice and passion stirred up by the charge to the grand jury.

■ Point 3 of the motion refers to the refusal of the court to require the United States attorney to inform and advise the defendants in this case as to the order in which it would be tried out of three companion cases. The point has no merit. Far more was done for these defendants than ever it has been the practice in this court to do for a defendant in a criminal case. These defendants were advised that out of all the many cases on the criminal calendar their case would be one of the first three to be tried, the two others being companion cases in which the attorneys for the defendants were the same as the attorneys in this case. To require the United States attorney, who must prepare a multitude of cases for trial, to inform each defendant as to the exact place with reference to all other cases at which his case will be tried, would be to paralyze the administration of the criminal law. The defendants in this case received not less, but more, than they were entitled to have in this regard.

■ Point 4 refers to the overruling of the motion to quash the petit jury panel. That motion was presented to the court after the case was called for trial on Monday, February 15th. It was promptly overruled. There was no time to prepare and file a memorandum setting out the reasons for the overruling of the motion. The principal complaint is that the panel of petit jurors was drawn from the whole of the Western District of Missouri, excluding Jackson county (Kansas City is in Jackson county).

The order directing that the panel of jurors be called from the entire district, but that Jackson county be excluded, sets out the reasons for the order. At least it sets out some of the reasons. If that order is incorporated in the record in this case, the reviewing court will have opportunity to read what is there embodied. The order, however, does not tell the whole story.

The undisputed testimony in this record throws a light on the situation that the judges of this court well understood. Here in this record is testimony undisputed that in the one precinct involved one of the convicted defendants threatened with death another of the defendants (who entered a plea of nolo contendere) if she did not consent that the ballots be not counted. Other evidence reveals that on election day three unidentified individuals (one was described as of dark complexion) so terrified one election official as that finally she was driven from her post of duty. From these facts, as well as from the undisputed and admitted fact that not a single ballot in this precinct was counted, it ought to be apparent that such sinister forces were and are lurking in the background in Kansas City as that it would be difficult to obtain from Jackson county jurors who would be free to vote their honest conclusions based upon evidence and law. Jurors as well as election judges may be threatened with "one way rides" and other forms of physical violence.

■ Points 5, 6, 7, and 8 of the motion are to the effect that the court should have directed verdicts of not guilty. The contention is one which cannot well be discussed without such a review of all the testimony as it is impracticable to set out in this memorandum. I think it is sufficient to say that in all the arguments and briefs of counsel upon preliminary motions (particularly upon the motion to quash the indictment) it was conceded that to refuse to count and to certify the vote of a citizen for a candidate representative in Congress is such an injury as the "civil rights" statute (Cr.Code § 19, 18 U.S.C.A. § 51), upon which the indictment in this case is based, seeks to protect against unlawful conspiracy. Here the evidence that no votes cast for the Republican candidate for Congress either were counted or certified in the precinct involved was so overwhelming that it was admitted by defendants' counsel in the opening statement to the jury, as well as in final arguments, to have been conclusively proved.

That would seem to leave one question only; namely, was this injury inflicted as a result of a conspiracy. The theory asserted by counsel for defendants in their arguments to the jury, that the injury was done entirely by the defendant Walker, who had terrorized all others and made them subject to his will, is not supported by the record. Certainly there is nothing in this record to justify the conclusion that the defendant Drummond, also convicted, who certainly participated in the infliction of the injury, was terrorized by the defendant Walker. A strain is imposed upon credulity when men are asked to believe that the admitted infamy practiced in this precinct could be and was perpetrated by a single man.

Points 9 to 22, inclusive, challenge the charge to the jury. In none of them, however, does there appear real merit. One who reads the charge will learn from it that defendants requested at least 38 instructions to the jury. Almost every one of the requests was given, most of them in the exact language in which they were requested, others in substance. No good purpose would be served by a particular consideration separately of any of the contentions made.

■ Points 23 to 67 concern rulings of the court admitting and excluding testimony. I consider it unnecessary to discuss the contentions separately. The ultimate fact which the government sought to establish by the evidence was that the votes cast for the Republican candidate for Congress in the precinct involved were not counted. If there was any error committed (and I know of none) in connection with the testimony offered and received which tended to establish that conclusion, it was entirely cured when defendants by their counsel in the opening statement and closing arguments frankly admitted to the jury that the votes were not counted and that the certification that no votes had been cast for the Republican candidate in Congress was false.

Rulings in connection with testimony offered for the purpose of proving an unlawful agreement not to do that which it was admitted was not done seem to me to be beyond any reasonable question.

Points 68 to 74 inclusive, require no separate discussion, since they are the general, all-inclusive, and summing up grounds set up in every motion for a new trial.